1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 | STATE FARM LIFE INSURANCE COMPANY, | ) Case No.: 1:18-cv-01373 - LJO - JLT |
| 12 | | ) |
| | Plaintiffs, | ) FINDINGS AND RECOMMENDATIONS GRANTING APPROVAL OF THE COMPROMISE |
| 13 | | ) ON BEHALF OF MINOR PLAINTIFF J.S. ) (Doc. 25) |
| | v. | ) |
| 14 | | ) |
| | BONIFACE OUTTA, et al., | ) ORDER VACATING THE HEARING DATE |
| 15 | | ) |
| | Defendants. | ) |
| 16 | | |

17          State Farm Life Insurance Company issued life insurance policies providing benefits to

18 decedent Lydia Oika.  State Farm filed its "Complaint for Interpleader," seeking to settle the rights and

19 claims to the policies.  The parties reached an agreement and Defendants now seek approval of the

20 minor's compromise for A.O., by and through his guardian ad litem Gertrude Anyango Okombo. (Doc.

21 25)  For the following reasons, the Court recommends the petition for approval of the settlement be

22 **APPROVED.**[1]

23 **I.      Background**

24          In October 2015, Lydia Oika was issued two State Farm life insurance policies, Nos. LF-3512-

25 8501 and LF-3612-8745.  (Doc. 1 at 4, ¶ 18)  Ms. Oika designated Boniface Outta, her spouse, as the

26 sole beneficiary.  (*Id.*)  In October 2015, Ms. Oika also became the owner of a State Farm group life

27

28          _____

[1] The Court finds the information provided by counsel in the supplemental briefing to be sufficient to address the petition without a hearing.  Accordingly, the matter is taken under submission pursuant to Local Rule 230(g) and the hearing set for June 10, 2019 is **VACATED**.

insurance policy, No. LF-3535-0100, for which she did not designate a beneficiary. (*Id.*, ¶ 19)

In March 2016, Ms. Oika and Mr. Outta "separated and entered into a Marital Settlement Agreement, in which they both agreed that 'neither of [them] shall remain as the beneficiary on any insurance policy carried by the other.'" (Doc. 1 at 4-5, ¶ 20) In September 2016, "a default judgment and order was entered dissolving the marriage," which "made no order as to property division and made no mention of the Marital Settlement Agreement." (*Id.* at 5, ¶ 21)

Ms. Oika was later diagnosed with a terminal illness. (Doc. 1 at 5, ¶ 22) Ms. Oika executed a written Durable Power of Attorney, granting her brother Richard Oika power of attorney. (*Id.* at 23) On May 19, 2018, Mr. Oika submitted a request under power of attorney to change the beneficiary of Decedent's Individual Policies from Outta" to her children, A.O. and Alvin Outta. (*Id.*, ¶ 24) Two days later, Mr. Oika "submitted a request under power of attorney naming himself as the beneficiary of Decedent's Group Policy." (*Id.*, ¶ 25) Ms. Oika passed away on May 30, 2018. (*Id.*, ¶ 26) According to State Farm, at the time of her death, A.O. and Alvin Outta "were the named beneficiaries of Decedent's two State Farm life insurance policies." (*Id.*, ¶ 26)

State Farm asserts that "because the executed Durable Power of Attorney did not expressly grant Oika the power to make changes to Decedent's life insurance policies, there exists a question of whether Oika had the authority to make a legally effective change to the beneficiaries of Decedent's Individual Policies and Group Policy." (Doc. 1 at 5-6, ¶ 29) Thus, there were "arguably competing claims between Outta, on one hand, and [A.O.] and [Alvin], on the other, over the Individual Policies." (*Id.* at 6, ¶ 30) Likewise, there were "arguably competing claims between Oika, on one hand, and the Estate of Lydia Oika, on the other, over the Group Policy." (*Id.*, ¶ 31)

On October 5, 2018, State Farm initiated the matter before the Court, naming Mr. Outta, Richard Oika, the executor of the estate of Lydia Oika, A.O., and Alvin Outta as defendants. (*See* Doc. 1) State Farm sought to have the defendants "interplead and settle or litigate among themselves their respective rights and claims to the proceeds under the Contract." (*Id.* at 7) Mr. Outta, Mr. Oika, and the Estate were voluntarily dismissed as defendants in the action, with only A.O. and Alvin Outta remaining as defendants. (*See* Docs. 5, 11 and 16)

In March 2019, the parties informed the Court that the action had been settled. (Doc. 19)

Accordingly, the Court ordered the parties to file a petition for approval of the minor's compromise. (Doc. 24) A.O. filed the petition now pending before the Court on April 26, 2019. (Doc. 25) The Court conducted a preliminary review of the petition and found it failed to satisfy the requirements of the Local Rules. Therefore, the Court ordered the petitioner to file a supplemental brief that provided additional information bearing on the Court's fairness determination. (*See* Doc. 26) A.O. filed a supplemental brief on May 14, 2019. (Doc. 27) Again, however, the Court expressed concern about the lack of information regarding the terms of the compromise for A.O. (*See* Doc. 28) A.O. filed a second supplement on May 31, 2019. (Doc. 30)

## II.     Settlement Approval Standards

No settlement or compromise of "a claim by or against a minor or incompetent person" is effective unless it is approved by the Court. Local Rule 202(b). The purpose of requiring the Court's approval is to provide an additional level of oversight to ensure that the child's interests are protected. Toward this end, a party seeking approval of the settlement must disclose:

> the age and sex of the minor, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent.

Local Rule 202(b)(2).

The Ninth Circuit determined that Federal Rule of Civil Procedure 17(c) imposes on the Court the responsibility to safeguard the interests of child-litigants. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Thus, the Court is obligated to evaluate the fairness of the settlement, even where a guardian recommends it. *Id.*, at 1181; *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) ("a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem"). The Court must evaluate whether the net amount to the child is fair and reasonable "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel" and "in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-1182.

**III.     Discussion and Analysis**

Petitioner has provided the information required by Local Rule 202(b)(2) for the Court to evaluate the fairness of the settlement terms.  A.O. was born on August 23, 2004 and is fourteen years old.  (Doc. 27 at 1)  Gertrude Anyango Okombo, the appointed guardian ad litem for A.O., reports that A.O.'s "claim arose out of a dispute with State Farm… over the proceeds of his mother's life insurance policy, the proceeds of which are being held by State Farm pending resolution of this litigation."  (Doc. 25 at 2)

**A.     Award to A.O.**

The parties have agreed the life insurance proceeds will be allocated equally between Alvin Outta and A.O., the children of Lydia Akumu Oika.  (Doc. 25 at 2; Doc. 27 at 2)  Ms. Okombo requests that the funds "be distributed to Petitioner in her capacity as Successor Trustee of The Lydia Akumu Revocable Trust dated May 24, 2017 (the "Trust"), where the funds will be held for the benefit of [A.O.] until such time as [he] reaches the age of 30 years."  (Doc. 25 at 2)

**1.     Distribution**

Under the terms of the Trust, funds may be used for A.O.'s "health, education, support and maintenance," and funds allocable to A.O. may "not be used for the benefit of Alvin Outta."  (Doc. 27 at 2; *see also* Doc. 27 at 11, § 6.04; Doc. 30 at 2)  Once A.O. "reaches the age of 25 years, one-half of the remaining principal balance of his share of the Contingent Distribution Trust will be distributed to him."  (Doc. 27 at 2; Doc. 27 at 11, § 6.05)  "[A]ll remaining funds held in the Contingent Distribution Trust that are allocable to [A.O.] will be distributed to him outright and free of further trust" once he turns 30 years old.  (*Id.*)

**2.     Unauthorized uses of the funds**

Reviewing the terms of the Trust, the Court expressed concern regarding whether A.O.'s share would be protected from unauthorized uses of the trust, such as funeral expenses, taxes, and administration expenses.  (Doc. 28 at 2)  In response, Petitioner notes that under California probate law, "assets held in a revocable trust established by a decedent are properly used to pay expenses allocable to the decedent if, in fact, the decedent's probate estate is insufficient to pay these expenses."  (Doc. 30 at 2)  However, Petitioner reports "all of the potential expenses referenced by the Court have already

been paid" (Doc. 30 at 2)—without the funds from the insurance policy being added to the Trust. Thus, Petitioner asserts "the subsequent contribution of [A.O.'s] share of the insurance proceeds from State Farm Life Insurance Company to the Contingent Distribution Trust for his use and enjoyment will not result in these funds being used to pay any of the Decedent's debts, last expenses or costs of administration." (*Id.* at 2)

### 3. Tax consequences

Previously, the Court observed the petition for approval of the minor's compromise "fail[ed] to explain whether there will be tax consequences for the child if his proceeds are placed into the trust," particularly compared to a situation where the funds were held in a blocked account for his benefit. (Doc. 28 at 3) In response, Petitioner asserts "[t]he life insurance proceeds are not subject to tax," and "having the life insurance proceeds transferred to the Contingent Distribution Trust will have no adverse impact upon [A.O.]." (Doc. 30 at 4) Petitioner also reports "there is no tax benefit to having the insurance proceeds held in a blocked account … until [A.O.] reaches the age of 18 years. (*Id.*)

## B. Attorney Fees and Costs

In the initial petition, there was no explanation as to the payment of attorney's fees and costs from the insurance proceeds, or whether funds would be taken from the distribution for A.O. for this purpose. (*See generally* Doc. 25) Counsel for Petitioner, Stephen Dake, reports that "for a number of years prior to the present litigation [he] … represented Lydia Akumu Oika and her company, Century Health Services Inc." (Doc. 27 at 2) According to Mr. Dake, following the death of Ms. Oika, he has "continued to represent the Petitioner, Century and other family members," and Century is paying the fees "for legal services rendered in the underlying litigation and also for representation of Petitioner in seeking … approval of the Petition to Compromise Claim of Minor." (*Id.*) Thus, the fees and costs shall not be deducted from the insurance distribution of A.O., and the payment of fees does not weigh against approval of the minor's compromise.

## IV. Findings and Recommendations

Based upon the information provided in the motion and the supplemental briefing, and considering the totality of the facts and circumstances of this case—and most particularly the equal division of the insurance proceeds between the two children of the decedent—the Court finds the

settlement agreement is fair, reasonable, and in the best interests of A.O. Based upon the foregoing, the Court **RECOMMENDS**: that the petition to approve settlement of the minor's claims be **APPROVED** as follows:

1. The petition to approve settlement of A.O.'s claims be **GRANTED**;

2. State Farm is DIRECTED to distribute one-half of the funds now in its possession related to Insurance Policies LF-3512-8501, LF-3512-8745, and LF-3535-0100 to Gertrude Anyango Okombo in her capacity as Successor Trustee of the Trust, to be held in trust for the benefit of A.O.;

3. A.O.'s share of funds held in the trust **SHALL only** be used for his health, education, support, and maintenance;

4. Despite the provisions of the Trust that permit otherwise, Gertrude Anyango Okombo **SHALL NOT** use any of the settlement funds allocable to A.O. and which will be deposited in the Trust for **any** purpose except for A.O.'s health, education, support, and maintenance;

5. That the parties be **DIRECTED** to file with the Court a stipulation for dismissal of the action with prejudice, and lodge a separate order, no later than ten days after these findings and recommendations are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

///

///

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **June 6, 2019**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE